The next case to be heard this morning is T.S. flying through his parents against Heart of CarDon. Mr. McNeil, you may proceed. Thank you, Your Honor. May it please the Court and Counsel. There are two primary points I hope to make during the minutes I have here while reserving about a minute for rebuttal. And those two points are two questions, really. Is the Simpson v. Reynolds metals case still good law after the passage of the Civil Rights Restoration Act of 1987 and some other developments or case law from the Supreme Court of the United States? And the second question is, how does the intended beneficiary concept from the Reynolds case apply in this case, which involves the claim of discrimination under Section 1557 of the Affordable Care Act, with the underlying plan being a self-funded plan for an assisted living, skilled nursing facility, so involved in health care? With respect to the Simpson case, we think it's still good law. A careful reading of it shows a few things. First, it was a case that involved an employee who was fired. He was a chronic alcoholic. It arose under Section 504 of the Rehabilitation Act, which, as we'll talk about in a little bit, is incorporated by reference into Section 1557. The main holding of that case from this court in 1980 was the plaintiff had not demonstrated a nexus between his discharge and the federal financial assistance that the company received. And the court wrote that the statute's terms apparently require that the discrimination have some direct or indirect effect on handicapped persons in the program or activity receiving the federal financial assistance. So that's where this intended beneficiary language or concept comes from. What the court also did was walk through several alternative arguments, and this is why I think Simpson is still good law. First, there was the question, the Civil Rights Restoration Act of 1987 expanded the scope of the program as defined under the under Section 1557 of the Affordable Care Act. And the court was very clear in distinguishing other cases, saying we're not looking narrowly at the question of which part of the organization received funding. We agree that the question of the intended beneficiary should not be narrowly determined based on which part of the company receives the funding. But instead, we have to look at the statute and whether there's a nexus between the purpose of the funds and the plaintiff. So really, the Civil Rights Act of 19 or Restoration Act of 1987 didn't change Simpson in that respect as it applies to our case. Our case is not a question of who is the right defendant. Our case is a question of who's the right plaintiff. The Civil Rights Act of 1964 and Title IX, because those are similar spending clause-type, contract-type arrangements between the federal government and the recipients of this assistance. And so Simpson really, what it does is identify the requirement of a nexus between the funds and the protections afforded by the statute, which gets us to the second question is how does that apply in an Affordable Care Act case under Section 1557? So the zone of interest or the intended beneficiary test has been the topic of several Supreme Court cases. There are discussed some in the briefing. The National Credit Union case that's referred to, there was some question about whether it rejected the intended beneficiary doctrine in favor of arguably intended by the statute standard. Justice Thomas in that case made clear in footnote seven that it was not changing anything of substance. It was only looking at the scope of the right to judicial review in an Administrative Procedure Act case, making clear simply you have to look at the statute in question. You can't just take an APA case or like the Lexmark case under the Lanham Act. You have to look at the statute itself and ask who the intended beneficiaries are. So there was, there have been really from Simpson's adoption by this court in 1980 to today, no developments, whether by Congress or by the Supreme Court have in any way changed the principle holding of that case, which is to broadly look at the organization or the program that receives the federal funds and ask if there's a nexus between the plaintiff and the receipt of those funds. So that gets us to, so I think Simpson from 1980 to today should be reaffirmed as valid controlling case law with respect to this intended beneficiary concept. Looking at the Affordable Care Act specifically, it does, there's two things that we need to understand. First is it identifies the protected classifications in the anti-discrimination provision by reference to Section 504 of the Rehabilitation Act, Title VI, Title IX, and the Age Discrimination Act. And it incorporates by reference the enforcement mechanisms of each of those statutes. And the intended beneficiary concept has been well-established with respect to those statutes for quite some time. So as in the Bennett versus Speer case that's discussed in the credit union case, Justice Scalia commented that when Congress legislates, it does so with the court's prudential standing doctrine in the background. And it expects that Congress being aware of that would make some expressed statement that would expand or make clear who the intended beneficiaries are. So in Section 1557 comes to the court with that history of those other incorporated statutes attached to it. So how does the zone of interest apply specifically here? We have an individual who's a participant in a self-funded health plan. Notably, and the contention is the exclusion of, the categorical exclusion of autism-related coverage is discrimination under Section 1557. So the Affordable Care Act has, it's obviously subject to a lot of litigation, but it has two macro goals, to get more people insured and to lower the cost. The tools that have been created to implement those goals include elimination of preexisting conditions, refusals, you can't discriminate on health status during enrollment, things of that character. They also adopt, there's a section that deals with the 10 categories of essential health benefits that counsel in this case in the amici rely on to show that there's some limitation on the intended beneficiary of Section 1557. But as we point out, those essential health benefits provisions of the Affordable Care Act don't apply to self-funded plans. So what does that tell us? That tells us Congress could have done more with self-funded plans to draw them into the large umbrella of the Affordable Care Act by, and the essential health benefits include mental and behavioral health, a category for mental and behavioral health, which is what would apply here. So Congress, while adopting Section 1557, does so with the background of the intended beneficiary doctrine that's been around for decades, and it doesn't totally rework the insurance industry. It makes clear that there are limits to it. So as it relates to this case, we have to apply Simpson, which means that the intended beneficiary of the federal funds Cardon allegedly receives Medicare for the patients they treat does not encompass or create a zone of interest for a participant in that plan to make a claim for discrimination under Section 1557 for an exclusion from a number of services Cardon supplies to its customers. And for the remaining 40 seconds, I'll reserve for rebuttal. Thank you. Ms. Hamburger? Good morning, Your Honors, and may it please the Court, I'm Eleanor Hamburger, and I'm here today on behalf of Appellees TS, a young child with autism, and his mother, a nurse who works for the Cardon Nursing Home. The District Court correctly determined that Appellees could bring a claim against Cardon, alleging that Cardon discriminated on the basis of disability when it designed and directed its health plan to exclude all coverage for autism. Cardon's appeal should be rejected, and the District Court's decision affirmed. These facts are undisputed. TS has autism and is enrolled in Cardon's health plan. Cardon designed the plan, pays for it, and controls it. And the Cardon plan excludes all coverage for autism, and Cardon receives federal money at the nursing home. Importantly, Cardon doesn't dispute that it must comply with Section 1557, the ACA's anti-discrimination law, even in the design in its health benefit plan. It only argues that TS, a child directly harmed by the autism exclusion that Cardon put in place, cannot bring this case because the zone of interest of the ACA applies only to Cardon's patients. That argument ignores the ACA's plain language, the legislative history, federal rules, and guidance. Instead, Cardon relies on the Simpson case and says it controls, since TS is not an intended beneficiary, the case. But that statutory framework from 504 that Simpson relied upon, the original framework, changed with the Civil Rights Restoration Act. It is no longer good law when it comes to Section 504. And importantly, no court has followed Cardon's reasoning when applied to the ACA's Section 1557, and this court should not either. So there are three main arguments I'll present today. Number one, that under the Supreme Court's zone of interest test, looking at the plain language, legislative history, federal rules, and guidance, the appellees are within the zone of interest of the Affordable Care Act. Number two, Simpson does not apply to the ACA. Although Section 504 is referenced in the statute, it is not cut and paste into it. The zone of interest test looks at the statute's purpose and scope. The ACA has a different purpose and scope than Section 504 as the Ninth Circuit concluded in Schmidt v. Kaiser. And those differences guide the outcome of this case. Nonetheless, if the court considers the Simpson case in this matter is no longer good law when it comes to Section 504, Congress changed the scope of Section 504 such that it applies to all parts of the defendant, not just the program receiving federal financial assistance and its recipients. Unless there are any questions, I'll get started, Your Honors. The zone of interest test, we've heard a lot talk about Simpson, but I want to first draw your attention to the specific language of 1557. It says, an individual shall not, on the ground prohibited under Section 504, be excluded from the participation in, denied the benefits of, or subjected to discrimination under any health program or activity, any part of which is receiving federal financial assistance, including credits, subsidies, or contracts of insurance. A few key points about the plain language. First, the statute applies to individuals, not just patients or recipients of federal financial assistance. Second, the plain language says it applies to all parts of a health program or activity, not just those parts receiving federal financial assistance or those parts involving patients. And third, it applies to coverage, contracts of insurance. That's a key difference from Section 504, which excluded contracts of insurance from its reach. In some, the plain language shows that it's not limited to only Cardon's patients or those who receive federal financial assistance. Now, this is confirmed by the legislative purpose of the ACA. In King v. Burwell, the Supreme Court directs that the ACA be interpreted consistent with its purpose as a whole. And it was about reforming health coverage and ending exclusions and limitations that kept people with disabilities uncovered or underinsured. In some, before the ACA, employers and insurance companies could freely discriminate in the design of health benefits. And after the ACA, they cannot. Cardon offers no statutory language or legislative history that supports its theory that the ACA's anti-discrimination law was somehow limited to just patients. And then third, federal regulators addressed this directly. Since 2016 and continuing uninterrupted to the present through various changes of the ACA's rules, the federal regulators have said the final rules prohibit an employer that received federal financial assistance that is principally engaged in the business of providing health care, such as a nursing home, from discriminating in employee health benefits. That's an addendum B. No rule or guidance limits the reach of 1557 to just patients of a covered entity. So, T.S. and his mother are both within the zone of interest to pursue this claim. Now, Cardon's patent-based argument saying that the court should look to Section 504 instead is unavailing. This court held in Simmons v. UBS Financial that the substantive provisions of the law determine what interests and what plaintiffs are protected. And the substantive provisions of the law here are the ACA, not Section 504. Nonetheless, if this court concludes that it must reach whether the question of whether Simpson is good law, it can no longer be upheld when it comes to Section 504. Civil Rights Restoration Act expanded the scope of Section 504 to include all operations of a covered entity, any part of which receives federal financial assistance. And that language is the same as in 1557. The Supreme Court spoke directly to this issue with National Credit Union when Justice Thomas concluded that the intended beneficiary doctrine is incompatible with the zone of interest test. And while that case addressed the dispute regarding the APA, the Supreme Court's conclusion has been applied generally to civil rights law writ large. Indeed, to the best of my knowledge, no other circuit has continued to follow the intended beneficiary doctrine when it comes to 504 after the modification of the CRRA and National Credit Union. And equally importantly, no court has applied the intended beneficiary doctrine to a 1557 case. In sum, this court should conclude that 1557 applies to all parts of a covered entity's including the design of its employer-sponsored health benefits. Congress intended to bring the employer-sponsored plans of covered entities within the zone of interest of Section 1557. There is no language in the statute that says we're going to apply it to parts of a covered entity's activities except for their employer-sponsored health benefit plans. As a result, employee appellees are well within the zone of interest to bring this 1557 case. The district court should be affirmed and Cardon's arguments rejected. Unless you all have any further questions, your honors, I'll sit down. Thank you, Ms. Hamburger. Mr. McNeil, you have a little bit less. Yes, thank you, your honor. With respect to Simpson and the Civil Rights Reform Act, please look at page 1235 of Simpson where it discusses the Simon case. I think that makes clear Simpson sort of predicted the changes in 1987-1988. With respect to the scope of the ACA, it was passed in 2010. In 2008, there's the Mental Health Parity Act, which was also a part of this case. Those are the two claims that the judge dismissed, finding that an absolute exclusion of autism was not a treatment limitation. Congress knew that statute existed when they passed the ACA. That's part of what informs the zone of interest analysis. My time has expired. Thank you, your honors, for your attention. Thank you. Thanks to both counsel and the case will be taken under advice.